**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| JENNIFER S. JONES,<br><br>Plaintiff,<br><br>v.<br><br>PARKVIEW HEALTH SYSTEM INC., et al.,<br><br>Defendants. | CASE NO. 1:25-CV-461-HAB-ALT |

**OPINION AND ORDER**

Pro se Plaintiff Jennifer S. Jones ("Plaintiff") is suing Parkview Health System Inc., Parkview Hospital Inc. (both collectively "Parkview"), and Parkview Police Officer Colten Jones ("Officer Jones") (collectively "Defendants"). (ECF 14). The claims in Plaintiff's ten-count Amended Complaint relate to her employment as a nurse at Parkview, her treatment as a patient in their care, and actions Parkview allegedly took in response to actions Plaintiff took in both settings. (*Id.*).

She asserts claims against Parkview for False Claims Act ("FCA") retaliation; disability discrimination in violation of the Rehabilitation Act; Family and Medical Leave Act ("FMLA") interference and retaliation; violations of her constitutional rights through claims under 42 U.S.C. § 1983 ("Section 1983"); false imprisonment; malicious prosecution; defamation; and intentional infliction of emotional distress ("IIED"). (*Id.*). Plaintiff lodges the Section 1983, false imprisonment, malicious prosecution, and IIED claims against Officer Jones as well, and further asserts an assault claim.

Defendants have moved to dismiss Plaintiff's complaint. (ECF 20). That motion is fully briefed and ripe for ruling. (ECF 21, 22, 24). For the following reasons, Defendants' motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. Factual Background

The well-pleaded facts alleged in Plaintiff's first Amended Complaint are detailed below.[1]

#### A. Plaintiff's Employment

Plaintiff is a registered nurse who previously worked for Parkview in Allen County, Indiana. (ECF 14, ¶ 3). Parkview is a hospital system that receives federal financial assistance through Medicare and Medicaid funding. (*Id.* ¶¶ 3, 5–10). Plaintiff has PTSD and Major Depressive Disorder, which she alleges in her Complaint make her a qualified individual with a disability that substantially limits major life activities. (*Id.* ¶ 4).

In 2021 and 2022, Plaintiff alleges that she reported specific instances of suspected Medicare fraud, Medicaid fraud, and patient safety issues both through Parkview's internal systems and directly to Parkview leadership. (*Id.* ¶ 13).[2] Other than these internal reports to

---

[1] Plaintiff cites several attached exhibits throughout her complaint. The Court recognizes Defendants' concern that none of these exhibits (ECF 23-2) appear to be original, which raises legitimate questions about their authenticity. But for purpose of a motion to dismiss under Rule 12(b)(6), the Court must and does accept all facts and allegations presented therein as true.

Defendants further note that these exhibits, though attached to Plaintiff's original complaint (ECF 1, 1-3), were not attached to the filing of her first amended complaint. (ECF 14, ¶ 29). She merely incorporated the exhibits by reference, which the local rules do not allow. N.D. Ind. L-R 15-1(b)(2). Plaintiff later re-filed the exhibits with her response to Defendants' motion to dismiss. (ECF 22, 23, 23-1, 23-2). Although this does not comply with the local rules, the Court will consider these exhibits as if they were properly attached and part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Further, to the extent that "an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

[2] She supports her allegations by citing public media reports of fraud allegations and *qui tam* actions brought against Parkview, as well as a settlement Parkview reached with the Indiana Attorney General for such fraud. (ECF 14, ¶ 13; ECF 23-2, at 12–15). She also cites emails in an exhibit that purport to verify her allegations that reports were made. (ECF 14, ¶ 13). But most of the six email quotes in that exhibit—all from the same email chain with the subject line

Parkview, Plaintiff makes no allegation that she reported any false claims to the federal government. She alleges retaliation began immediately after making these internal reports, including "isolation, schedule manipulation, and bans on email reporting." (ECF 14, ¶ 15). She says this retaliation caused her health deterioration. (*Id.*).

Years later, between 2023 and 2024, Plaintiff alleges Parkview engaged in acts that amounted to interference and retaliation under the FMLA. (ECF 14, ¶ 17). These actions included interfering with her leave requests and retaliating against her for making them. She also alleges Parkview manipulated her schedule; disciplined her; screened her patient safety reports; denied her job training; and constructively discharged her. (*Id.*).

**B. <u>Plaintiff's Medical Treatment</u>**

In September 2022, eight months after Plaintiff reported her fraud and patient safety concerns, she went to Parkview as a patient seeking emergency room ("ER") care for severe stomach pain. (*Id.* ¶ 16). During that visit, Plaintiff asserts that staff improperly labeled her as "drug-seeking" and that clinical notes contradicted this conclusion. (*Id.*). She includes as an attachment to her complaint an email she sent to Parkview complaining about her treatment, stating she was treated like a "med seeker." (*Id.*, ECF 23-2, at 25).

More than a year later, on October 26, 2023, Plaintiff went to the ER again. (ECF 14, ¶ 18). She presented with hypertensive blood pressure but received no treatment. (*Id.*). Plaintiff asserts she tried to leave, but Parkview officers chased her down in the parking lot and attempted to detain her. (*Id.*). During that chase, Officer Jones brandished a firearm. (*Id.*). In the end, Plaintiff

"Internal Transfer," with five excerpted from the same message—do not contain what she suggests. (ECF 23-2, at 16–18). Three reference concerns for patient safety or protocol, and one references a report about a specific patient. (*Id.*, at 16). None directly mention Medicaid or Medicare fraud. (*Id.*, at 16–18).

managed to leave. (*Id.*). Plaintiff reported to the Parkview Patient Advocate the next day and messaged her therapist shortly thereafter on October 29, 2023. (ECF 14, ¶ 20).

On October 30, 2023, Plaintiff attended a scheduled therapy session at Parkview. (*Id.* ¶ 21). Once there, a Parkview officer was waiting to execute a pre-planned detention[3] before any clinical evaluation. (*Id.*). The visit was documented, with clinical notes showing that the criteria for an involuntary hold were not met. (*Id.* ¶ 22). Plaintiff was discharged the next day. (*Id.* ¶¶ 23, 34). Plaintiff's exhibits suggest that this October 30 evaluation completed a wellness check initiated on October 26. (ECF 23-2, at 37). The Parkview Patient Advocate confirmed that Plaintiff's departure on October 26 occurred before that wellness check, which had to be performed by the Fort Wayne Police Department, was complete. (*Id.*).

### C. <u>Prosecution</u>

One month later, Officer Jones initiated criminal charges by filing an affidavit which Plaintiff asserts omitted exculpatory facts and contradicted his previous statements to the Fort Wayne Police Department. (ECF 14, ¶ 24). Plaintiff's exhibits include the following alleged excerpts from Officer Jones's affidavit regarding what happened during her second ER visit:

> On or about the 26th, day of October 2023 […] did knowingly commit the crimes) of: resisting law enforcement with a vehicle 35-44.1-3-1, criminal recklessness (35-42-2-2) and reckless driving 9-21-8-52.)
>
> . . .
>
> We were pursuing Jennifer because we were told that she was on a 48-hour hold that was later determined not to be accurate.
>
> . . .

[3] It is unclear whether Plaintiff "pre-planned" her own stay at the hospital for treatment or whether she is alleging that Parkview decided to put her on an involuntary hold before she arrived for her appointment.

> In fear that she was going to run over officer Miller I drew my firearm and told her to stop. […] Jennifer then sped off in her vehicle through a crowded parking lot with several bystanders.

(ECF 23-2, at 38).

It is not the standard practice of Parkview to press charges on patients. (ECF 14, ¶ 25). But Plaintiff says charges were nonetheless formally filed in January 2024 and remained pending for eighteen months. (*Id.* ¶ 26). This caused harm to Plaintiff's reputation, livelihood, and emotional well-being. (*Id.*). Parkview also filed a medication theft complaint that Plaintiff claims is fabricated. (*Id.* ¶ 27). She alleges Parkview changed their story to pin the theft on her, shifting their timeframe for the alleged theft from a three-day window to having occurred on the only day Plaintiff worked that week. (*Id.*). This complaint was rejected by the Attorney General and "an inside witness confirmed targeting and lack of evidence." (*Id.*).

## **LEGAL STANDARD**

When the Court reviews a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1 (2002). The facts must also be viewed in the light most favorable to the plaintiff. *In re HealthCare Compare Corp. Sec. Litig.,* 75 F.3d 276, 279 (7th Cir. 1996).

To survive a motion to dismiss, a plaintiff's complaint must state a claim for which the Court could grant relief. Fed. R. Civ. P. 12(b)(6). The factual allegations in the complaint must also "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). They also need to be facially plausible. *Id.* To be facially plausible, the complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* But because the plaintiff in this case is representing herself, the Court must liberally construe her complaint and hold it to a "less stringent standard[] than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## DISCUSSION

### I. The Facts the Court Can Consider

Before starting this analysis, the Court needs to address how the parties have presented their arguments throughout their briefs.

Defendants' briefs in support of their motion to dismiss consistently include factual allegations found only in Plaintiff's original complaint. (ECF 21, 24). Defendants do so both to fill in gaps in the Amended Complaint's factual history and to highlight contradictions between the two complaints. (ECF 21, at 4 n. 3). They invite the Court to consider these aspects of the original complaint and cite another case from the Northern District of Indiana to support that this would be appropriate. *Vukadinovich v. Posner*, No. 2:22-CV-118-TLS-JPK, 2023 WL 4931648 (N.D. Ind. June 21, 2023). But Defendants are wrong, and *Vukadinovich* does not stand for what they say it does.[4]

"An amended pleading supersedes the original." *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 207 (7th Cir. 2008). "[F]acts or admissions from an earlier complaint that are not included in a

---

[4] *Vukadinovich* contains language about courts being permitted "to consider direct contradictions between earlier pleadings and a proposed amended pleading." *Vukadinovich v. Posner*, No. 2:22-CV-118-TLS-JPK, 2023 WL 4931648, at *27 (N.D. Ind. June 21, 2023). But this rule is discussed in the context of courts considering motions for leave to amend complaints. *Id.* It says nothing of motions to dismiss already amended complaints.

later complaint cannot be considered on a motion to dismiss." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013). And "where the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out." *Id.* at 783. These longstanding Seventh Circuit rules preclude the Court from considering the contents of Plaintiff's original complaint in ruling on this motion to dismiss.[5]

For her part, Plaintiff's response to Defendants' Motion to Dismiss relies in part on facts that she did not include in the Amended Complaint. While a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may "consider additional facts set forth in" a brief opposing dismissal "so long as those facts 'are consistent with the pleadings.'" *Phillips*, 714 F.3d at 1019–20 (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Thus, to the extent Plaintiff's additional facts are consistent with the Amended Complaint, the Court has considered them.

## II. <u>Plaintiff's Federal Claims</u>

### A. <u>FCA Retaliation</u>

The FCA "imposes a civil penalty and treble damages upon any person who presents to the United States Government 'a false or fraudulent claim for payment or approval.'" *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 478–79 (7th Cir. 2004) (citing 31 U.S.C. § 3729(a); *Id.* §§ 3729–3732 (2004)). "To enhance enforcement, the Act permits private persons known as relators

[5] The Court is only aware of one exception to this rule: *verified* complaints, which are "the equivalent of an affidavit for purposes of summary judgment." *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Plaintiff's Amended Complaint is not a verified complaint, so this exception does not apply.

to bring *qui tam* actions on behalf of the government." *Id.* To establish a claim, a relator must show that the defendants knowingly caused false claims to be submitted to the federal government and that the falsity was material to the government's decision to pay the claim. *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 740 (7th Cir. 2021).

The FCA also protects whistleblowers from retaliation, "providing that '[a]ny employee ... shall be entitled to all relief necessary to make that employee ... whole, if that employee ... is discharged, demoted, suspended, threatened, harassed, or ... discriminated against in the terms and conditions of employment because of lawful acts done by the employee ... or associated others' in furtherance of [an FCA] action." *Heath v. Indianapolis Fire Dep't*, 889 F.3d 872, 874 (7th Cir. 2018) (quoting 31 U.S.C. § 3730(h)(1)).

To survive a motion to dismiss, a complaint alleging an FCA retaliation claim must contain factual allegations that, if proven, would establish that (1) the plaintiff was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, (2) the employer knew the plaintiff was engaged in protected conduct, and (3) the employer was motivated to take an adverse employment action against the plaintiff because of the protected conduct. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002); *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 828 (N.D. Ill. 2016).

Parkview argues that Plaintiff's FCA retaliation claim must be dismissed for several reasons. It asserts Plaintiff did not engage in protected activity under the FCA and she was not subjected to any adverse employment action *because of* that protected activity. More specifically, Parkview argues that Plaintiff's internal reports did not report FCA violations or internally report suspected fraud as her Amended Complaint suggests and, even if they did, there are no plausible facts showing that Plaintiff was subjected to an adverse employment action.

Under § 3730(h), protected activity can be (1) acts done in furtherance of an FCA action or (2) efforts to stop an FCA violation. "Reporting suspected misconduct to internal supervisors" may constitute protected activity. *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847 (7th Cir. 2012); *see also Klee v. McHenry County College*, 2017 WL 3168973, at *2 (N.D. Ill. July 26, 2017) ("Reports to supervisors are a natural first step to stopping fraudulent activity and, depending on the employee's position and the employer's response, may be the only activity they can engage in before filing their lawsuit.").

Plaintiff's Amended Complaint alleges that she engaged in protected activity by making internal reports to Parkview of suspected Medicaid or Medicare fraud in an effort to stop violations by Parkview. This is contradicted, Parkview argues, by documents attached to Plaintiff's Amended Complaint of reports Plaintiff submitted to Parkview that do not allege any kind of false or fraudulent Medicaid or Medicare claim being reported by Plaintiff. Thus, Parkview asserts that Plaintiff has pled herself out of court by failing to plead that she engaged in protected conduct.

To assess whether Plaintiff's conduct was protected under the statute, courts examine "whether (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016) (citation and internal quotation marks omitted). "An employee need not have actual knowledge of the FCA for his actions to be considered 'protected activity,'" as long as "the employee in good faith believes, and a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Fanslow v. Chicago Mfg. Center, Inc.*, 384 F.3d 469, 479-80 (7th Cir. 2004). In this context, reasonableness requires

the Court to examine "the facts known to the employee at the time of the alleged protected activity." *Id.*

As it stands, the Amended Complaint's allegations and the supporting documentation for those allegations establish only complaints about internal processes and patient care, not allegations that Parkview was engaged in fraud against the government. *See United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 665 (7th Cir. 2022) (affirming dismissal because "[e]ven crediting all well-pleaded facts as true and drawing all reasonable inferences in [Plaintiff's] favor… her report of illegal activity lacked the required "reasonable objective basis"); *United States v. Pfizer Inc.*, 2019 WL 1200753, at *9 (N.D. Ill. Mar. 14, 2019) (dismissing FCA claim because a reasonable employee in similar circumstances might believe company had quality control problems and violated regulations, but that does not mean a reasonable employee might believe those things "constitute *fraudulent claim* activity—particularly when Relator fails to allege he made any complaints relating to government claims or payment").

While a retaliation plaintiff "need not be able to prove fraud on the merits[,]" *Abner v. Jewish Hosp. Healthcare Servs., Inc.*, 2008 WL 3853361, at *8 (S.D. Ind. Aug. 13, 2008) (citing *Neal v. Honeywell Inc.*, 33 F.3d 860, 864–65 (7th Cir. 1994)), she must provide *some* factual basis for her belief that she is engaging in protected activity under the FCA. Indeed, "Congress intended to protect employees from retaliation while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together." *United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 982 (S.D. Ind. 2018). But the FCA does not protect "an employee who just imagines fraud without proof." *Id.* The employee cannot "play[ ] the part of Chicken Little[,] ... imagin[ing] fraud but lack[ing] any objective basis for that belief[.]" *Lang v. Nw. Univ.*, 472 F.3d 493, 495 (7th Cir. 2006).

It may be that Plaintiff has facts, known to her at the time that she made reports to Parkview that would demonstrate her good faith belief that she was reporting conduct prohibited by the FCA in an effort to stop violations of the FCA. Those same facts may also be enough to plausibly allege that a reasonable employee might believe that those facts constitute fraudulent claim activity. But as it stands now, the Amended Complaint is void of such facts. For this reason, the Court grants Parkview's Motion to Dismiss, but also grants Plaintiff one final opportunity to amend her complaint if she believes she has facts with which to plausibly allege a claim for FCA retaliation under 31 U.S.C. § 3730(h).

Parkview also asserts that Plaintiff has not pleaded enough facts to support a plausible inference that she suffered an adverse employment action or that the actions taken against her were temporally connected to her internal complaints. For sure, Plaintiff's Amended Complaint seems internally inconsistent. She states, for instance, at ¶ 15 that after submitting her internal complaints in 2021-2022, "[r]etaliation began immediately…including isolation, schedule manipulation, and bans on email reporting." In ¶ 30, Plaintiff says that in 2023-2024 "Parkview took adverse actions – schedule/FTW manipulation, discipline, MIDAS interception, denial of PRN role training, constructive discharge." As with her allegations of engaging in protected activity, Plaintiff's Amended Complaint is short on facts.

To the extent Plaintiff alleges that Parkview took adverse actions against her for filing the internal complaints, she must plead facts that support the inference that Parkview took particular actions because she engaged in protected activity. When determining whether an employer took adverse action against an employee because of his or her protected activity, courts may consider the timeline of events. *See United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018). Thus, if Plaintiff amends her complaint, she should also include facts, including a

timeline, of when she is asserting the various adverse actions occurred. See *Nifong v. SOC, LLC*, 190 F.Supp.3d 549, 559 (E.D. Va. 2016) (allegations that plaintiff's employer implemented a schedule adverse to plaintiff nearly twelve weeks after plaintiff reported defendant's fraudulent billing practices were sufficient to support a causal nexus between the protected activity and adverse action at the motion to dismiss stage). In the absence of amendment by Plaintiff as set out above, her FCA retaliation claim will be dismissed.

### B. Section 504 of the Rehabilitation Act

Claims under Section 504 of the Rehabilitation Act are available to plaintiffs who were "subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a prima facie Rehabilitation Act claim, a plaintiff must allege that (1) that they are a disabled individual under the act; (2) that they are "otherwise qualified" for any benefit sought; (3) that they were discriminated against solely because of their disability; and (4) that the program that discriminated against them receives federal financial assistance. *Id.*; *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

Defendants argue that Plaintiff's Rehabilitation Act claim against Parkview must be dismissed because her complaint does not satisfy either the second or third elements. No doubt, Plaintiff's Amended Complaint and exhibits contain very little about her Rehabilitation Act claim. In fact, the following paragraph identifying this count of her complaint is the only explicit reference to it:

> Count II– Rehabilitation Act § 504 (29 U.S.C. § 794): Disability Discrimination/Failure to Accommodate/Retaliation (Parkview Health; Parkview Hospital; Park Center)
> 31. Parkview entities receive federal financial assistance. Plaintiff is a qualified individual with a disability. Parkview failed to provide reasonable accommodations, failed to engage in the interactive process, and retaliated for protected requests in 2023-2024, causing harm. (Ex. 12; Ex. 20-24; Ex.26).

(ECF 14, at 7).

Even reading the facts in the Amended Complaint and exhibits favorably to the Plaintiff, the Amended Complaint fails to identify the basic facts surrounding a request for accommodation that she sought related to her disability. While Plaintiff alleges she was a qualified individual with a disability, several necessary facts are missing.

First, Plaintiff asserts that Parkview interfered with her staffing schedule, employee classification, and her ability to attend training for a different job. But she has failed to tie these issues to any request she made for an accommodation for her disability. Second, other than her basic assertion that Parkview retaliated against her by interfering with her staffing schedule, classification, and training, she has not asserted any adverse action Parkview took against her. Thus, any claims for disability discrimination or retaliation fall short of stating a claim.

That said, the Court will permit Plaintiff one final attempt to amend her Rehabilitation Act complaint to allege discrimination and/or retaliation. Plaintiff should plead facts showing that she is an individual with a disability, that she sought reasonable accommodation for her disability and the nature of the requested accommodation, that Parkview denied her request, and that she was otherwise qualified with the accommodation to perform her job. If Plaintiff alleges that Parkview retaliated against her for requesting an accommodation, she should plead those facts and the alleged actions taken against her by Parkview with some specificity. She should identify what accommodation she sought for her disability and what actions Parkview took to retaliate against her for requesting that accommodation. For now, however, Defendants' motion to dismiss the Rehabilitation Act claim is granted.

### C. FMLA Claims

To state a claim for FMLA interference, Plaintiff must show (1) she was eligible for FMLA protection, (2) she worked for a covered FMLA employer, (3) she was entitled to FMLA leave,

(4) she gave enough notice of her intent to take leave, and (5) her employer denied her FMLA benefits she was entitled to. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). For a retaliation claim, she would need to show that "(1) [s]he engaged in a protected activity; (2) h[er] employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Plaintiff has pleaded enough to plausibly satisfy the elements of both claims.

Plaintiff specifically alleges that she made protected leave requests and that Parkview interfered with her efforts. She details several actions—including schedule manipulation, employee status manipulation, and constructive discharge—which she asserts were retaliatory.

Parkview does not contest that Plaintiff has satisfied the elements of an interference claim in her pleading. They only contend that her claim is barred by the statute of limitations. But this argument is dependent on facts from the original complaint which the Court can no longer consider. (ECF 21, at 14–15). Plaintiff's Amended Complaint alleges that the retaliation occurred in 2023 and 2024. (ECF 14, ¶ 17). Because Plaintiff filed her complaint in 2025, at least some of her allegations fall within the two-year statute of limitations. 29 U.S.C. § 2617(c)(1).

For Plaintiff's retaliation claims, Parkview argues that the two-year gap between Plaintiff's leave and the alleged FMLA retaliation makes her claim for a causal connection too attenuated. But this time gap is reflected only in Plaintiff's original complaint. No time gap is specified in the Amended Complaint. To the extent any time gap does exist between Plaintiff's FMLA leave and the alleged retaliation, the Amended Complaint does not clearly reveal it. So even though time gaps could defeat allegations of a causal connection, there is not enough present to justify dismissing the case at this early stage. Parkview also contends that because the FMLA requires

"but for" causation, her other claims in this complaint necessarily contradict her pleading and defeat her claim. But like with her Rehabilitation Act claim, Plaintiff is allowed to plead in the alternative at this stage. *See* Fed. R. Civ. P. 8(d)(2). Thus, this is not a basis for dismissing her FMLA claims.

Defendants' motion to dismiss Plaintiff's FMLA claims is denied.

### D. Constitutional Claims

Plaintiff asserts different constitutional claims through 42 U.S.C. § 1983 against Officer Jones and Parkview. She alleges Officer Jones violated her Fourth Amendment rights through an unlawful seizure and violated her substantive due process rights under the Fourteenth Amendment. Plaintiff also makes claims against Parkview under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), alleging the existence unconstitutional policies as well as a failure to train. The Court addresses each of these claims in turn.

#### 1. Officer Jones

##### a. Fourth Amendment

A plaintiff can assert claims for violations of her constitutional rights through Section 1983 if she alleges (1) that she was deprived of a right under the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983. Here, Plaintiff asserts that Officer Jones violated her Fourth Amendment rights on two separate dates.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim under Section 1983 for unreasonable seizure in violation of the Fourth Amendment, a plaintiff must allege conduct that constitutes a seizure and that the seizure was unreasonable. *See Brower v. County of Inyo,* 489 U.S. 593, 599 (1989) ("'Seizure' alone is not

enough for § 1983 liability; the seizure must be 'unreasonable.'"). Plaintiff's complaint bases her unlawful seizure claim on Officer Jones's efforts to detain her following her October 26 ER visit and her "pre-planned" detention for the wellness check on October 30. In response, Defendants argue that Officer Jones was not involved with the October 30 incident and that the Defendant was not "seized" within the meaning of the Fourth Amendment on October 26.

The Court can easily dispense with both Plaintiffs' contentions. First, as to the October 30 incident, Defendants argue, and Plaintiff concedes, that her complaint does not allege Officer Jones was present when she was seized on October 30. (ECF 22, at 12). She argues instead that "[t]o the extent Defendants argue Officer Jones was not physically present on 10/30, the § 1983 claim against him arises from his role in the chain (10/26 assault/attempted detention; 11/28 affidavit)." (*Id.*). The Court disagrees. While the events of October 26 may have informed Plaintiff's detention on October 30 during the wellness check, Officer Jones did not seize or detain Plaintiff on that date. Because the events of October 30 do not implicate Officer Jones, Plaintiff cannot state a claim against him for the October 30 detention on that basis.[6] *See Minix v. Canarecci,* 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation").

This leaves the October 26 incident. Plaintiff's complaint asserts that she was discharged from the hospital and as she was leaving, Officer Jones chased her through Parkview's parking lot

---

[6] Plaintiff further requests, in the alternative, that she be allowed to amend her complaint to add the specific officers involved in the October 30 detention. (ECF 22, at 12). Although the Court will grant Plaintiff permission to amend her complaint to cure some of her other claims, *see infra*, the Court will deny this request. Curing claims against existing Defendants is much less onerous than adding new ones roughly a year after this lawsuit was filed and nearly three years after the events took place. Because of the passage of time, the claims against these yet-to-be-named officers may also be barred by the statute of limitations, and amendments to include the officers may not relate back. *See Terry v. Calhoun*, No. 1:17-CV-440-TLS, 2018 WL 6308998, at *3 (N.D. Ind. Dec. 3, 2018) (statute of limitations for § 1983 claims in Indiana is two years); Fed. R. Civ. P. 15(c)(1)(C).

and brandished a firearm to prevent her from leaving. She asserts that despite being chased, she got into her car and drove away. She believes these acts violated her Fourth Amendment rights.

A person is "seized" whenever an official "restrains his freedom of movement" such that he is "not free to leave." *Brendlin v. California*, 551 U.S. 249, 254–55 (2007). Likewise, a show of authority by an official can result in a seizure, even absent physical restraint, if the person yields to it. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure by a show of authority does not occur unless the subject yields); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10. (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority ... in some way restrained the liberty of a citizen[.]" (citation and internal quotation marks omitted)). "While an officer's application of physical force always constitutes a seizure, a 'show of authority' alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed *actually submits* to that authority." *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) *see also Brendlin* 551 U.S. at 254 ("A police officer may make a seizure by a show of authority ... but there is no seizure without actual submission[.]"); *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) (explaining that no seizure occurs under the Fourth Amendment "until force is applied or the suspect submits to the officer").

The problem with Plaintiff's assertions here is that she does not allege that her freedom of movement was restrained and she admits she did not yield in response to Officer Jones' show of authority. Without the physical restraint of the Plaintiff or her actual submission to a show of authority, "there is at most an *attempted* seizure, so far as the Fourth Amendment is concerned." *Brendlin*, 551 U.S. at 254.

Plaintiff does plead that Officer Jones drew his weapon and asserts that she was not free to leave, but this is not enough to show that she was "seized" as contemplated by the Fourth Amendment. Indeed, under Seventh Circuit precedent, no seizure occurs under the Fourth Amendment even when officers fire gunshots at a fleeing suspect and miss because that does not amount to physical force. *Green v. Chvala*, 567 F. App'x 458, 460 (7th Cir. 2014) (holding that plaintiff was not seized under the Fourth Amendment where officer's shots did not hit him); *Cabell v. Rousseau*, 130 F. App'x 803, 807 (7th Cir. 2005) (holding that plaintiff was not seized by physical force because, while officers fired at him numerous times, he was not struck by any of the bullets); *see also Valle v. City of Chicago*, 333 F. Supp. 3d 800, 806 (N.D. Ill. 2018) ("The shots fired by [the officers] do not qualify as 'physical force,' for purposes of a Fourth Amendment seizure, because Plaintiff has not alleged that the bullets struck him or his vehicle.").

*Valle* is instructive. There, the Plaintiff's vehicle became lodged in a snow bank on a street outside a home he was visiting. While he (and others who had come outside to assist him) dislodged the vehicle, officers were responding to a shots-fired call in the area. The Plaintiff there alleged that as he dislodged his vehicle and was leaving the area, he drove by officers who, in turn, indiscriminately fired at his vehicle. He alleged he was terrified of being killed and fled the scene. So the Plaintiff sued, alleging that the officers violated his Fourth Amendment rights when they fired at his vehicle.

The court in *Valle* held that the Plaintiff did not state a Fourth Amendment claim. In doing so, the court acknowledged that, "[t]he officers' shots might well qualify as a 'show of authority' for purposes of the Fourth Amendment" *Valle*, 333 F. Supp. 3d at 806 (citing *Carlson v. Bukovic*, 621 F.3d 610, 619 (7th Cir. 2010) (identifying "the display of a weapon" as a factor relevant to whether a seizure has occurred). But ultimately, "because [the Plaintiff] did not submit to the

officers' putative show of authority, and he does not allege that his freedom of movement was otherwise restrained, Plaintiff was not 'seized.'" *Id.*

Here, like in *Valle*, Plaintiff makes no assertion that Officer Jones physically detained her. She acknowledges that despite Officer Jones brandishing a firearm, she drove away. Given the absence of any physical detention or submission by Plaintiff to the officer's authority, she cannot state a Fourth Amendment claim against Officer Jones for the October 26 incident.

**b. <u>Fourteenth Amendment</u>**

Plaintiff utilizes the same series of events above to assert that Officer Jones violated her Fourteenth Amendment substantive due process rights. But the Seventh Circuit has made clear that Section 1983 claims for unlawful seizures "rest[] *exclusively* on the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). "In other words, the Fourth Amendment, not the Due Process Clause, is the source of the right in a [Section] 1983 claim" for Plaintiff's claim. Other than the allegations related to Officer Jones pursuing her in the parking lot, Plaintiff has not stated a claim for any violation of her Fourteenth Amendment protections.[7]

Defendants' motion to dismiss the Fourth and Fourteenth Amendment claims against Officer Jones is granted.

**<u>2. Parkview</u>**

Plaintiff also makes a claim against Parkview under *Monell* alleging the existence of unconstitutional policies as well as a failure to train. Claims under § 1983 can generally only be brought against municipalities or those acting under color of state law. Here, however, Parkview

---

[7] The Fourteenth Amendment is relevant insofar as it incorporates Fourth Amendment protections to the states. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). But Plaintiff has no Section 1983 claim through the Fourteenth Amendment.

is a private entity, and nothing in the complaint suggests that it was acting under the color of state law. Thus, she cannot state a viable claim against it under §1983.

Therefore, Defendants' motion to dismiss the *Monell* claim is granted.

## III. Plaintiff's State Claims

In addition to her federal claims, Plaintiff also asserts several claims under Indiana state law: assault, false imprisonment, malicious prosecution, IIED, and defamation. The Court addresses each in turn.

### A. Assault, False Imprisonment and Malicious Prosecution Claims against Officer Jones

The Indiana Tort Claims Act ("ITCA") imposes requirements on plaintiffs who pursue certain kinds of claims. The ITCA governs lawsuits against municipalities and government employees who commit torts within the scope of their employment. Ind. Code § 34-13-3-3. But the ITCA also covers hospital police officers, who have "[t]he same common law and statutory powers, privileges, and immunities as sheriffs and constable." Ind. Code § 16-18-4-6(a)(2). For many kinds of torts, the ITCA provides immunity to those covered, barring any plaintiffs from suing. Ind. Code § 34-13-3-3. Plaintiffs cannot sue individual employees personally if they allege that the employees "acted within the scope of [their] employment." Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). An employee's actions may fall within the scope of their employment "if his purpose was, to an appreciable extent, to further his employer's business." *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). For an employee's act to fall outside the scope of their employment, it must occur "within an independent course of conduct not intended by the employee to serve any purpose of the employer.'" *Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 792 (Ind. 2015).

Plaintiff's complaint pursues assault, false imprisonment and malicious prosecution claims against Officer Jones based on his pursuit of her as she left Parkview's ER on October 26, 2023.[8] She alleges that Officer Jones pursued her because he believed Parkview placed her on an involuntary hold. Her malicious prosecution claim is based on Officer Jones' affidavit that led to the initiation of criminal charges against Plaintiff. But Plaintiff does not allege that Officer Jones acted outside the scope of his employment with Parkview when he took the actions that he did. Rather, the reasonable inference from the facts she pleads is that Officer Jones, as part of his duties with Parkview, chased her because he believed the hospital had placed a hold on her. She has not alleged any action that would fall outside the scope of his employment with Parkview, and thus, she fails to state a claim against Officer Jones for assault, false imprisonment, or malicious prosecution. *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (citing the ITCA and dismissing a state-law malicious prosecution claim against a police officer).

**B. <u>False Imprisonment against Parkview</u>**

Plaintiff also asserts a false imprisonment claim against Parkview premised on Parkview improperly holding her—or attempting to—during an ER visit and a therapy appointment. Defendants move to dismiss the claim, arguing that this Court is precluded from hearing it under Indiana's Medical Malpractice Act ("MMA").

The MMA imposes requirements on Plaintiffs before they can sue qualified medical providers like hospitals for claims that sound in medical malpractice. Ind. Code § 34-18-8-4. Plaintiffs must first present their proposed complaint to a medical review panel through the Indiana

---

[8] Plaintiff concedes Officer Jones was not present for the events on October 30, so he cannot be held liable for any assault or false imprisonment on that date.

Department of Insurance and that panel must issue an opinion. *Id.*; *see also H.D. v. BHC Meadows Hosp., Inc.*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008).

Although Plaintiff has framed her claim as one for false imprisonment against Parkview, the MMA defines "malpractice" to include "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. This definition "neither specifically includes nor excludes intentional torts from the definition of malpractice." *Van Sice v. Sentany*, 595 N.E.2d 264, 266 (Ind. Ct. App. 1992). But at least one court has found that the definition can include false imprisonment where the claim arises from the Plaintiff's treatment by a health care provider. *Semones v. Scott Cnty. EMS*, No. 4:22-CV-00089-KMB-JMS, 2023 WL 2895548, at *4 (S.D. Ind. Apr. 11, 2023).

Here, as alleged, Plaintiff's claim for false imprisonment arises from the medical and professional services Parkview provided to her. This seemingly places her claim within the reach of the MMA's provisions. Plaintiff's complaint does not allege that she complied with the MMA prior to bringing suit and under Indiana law, a Court may not adjudicate a medical malpractice claim against a qualified medical provider before the plaintiff has filed a proposed complaint with the Indiana Department of Insurance (the "IDOI") and a medical review panel has issued an opinion on the claim. Thus, this Court is precluded under Indiana law from adjudicating her false imprisonment claim against Parkview.

Defendants' motion to dismiss the false imprisonment claim is, therefore, granted.

### C. Malicious Prosecution against Parkview

A plaintiff pursuing a malicious prosecution claim must prove four elements: "(1) the defendant [] instituted or caused to be instituted an action against the plaintiff []; (2) the defendant

acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). "Malice may be shown 'by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances.'" *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F,3d 457, 462 (7th Cir. 2009).

Parkview argues that Plaintiff's malicious prosecution claim centers on actions taken by Officer Jones. Plaintiff alleges no facts that suggest Parkview itself took steps to initiate or pursue Plaintiff's criminal prosecution. Still, Officer Jones is a Parkview employee. And even though he is immune, that does not mean Parkview is. *See Est. of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 254–55 (Ind. Ct. App. 2013) (noting that immunities for an agent do not generally transfer to the principal in *respondeat superior* cases). An employer may be vicariously liable for an employee's wrongful acts if those acts were "committed within the scope of the agency relationship." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 519 (Ind. 2014). Parkview employed Officer Jones as a hospital police officer. Plaintiff's Amended Complaint alleges facts against Officer Jones related to the initiation of her criminal charges that appear to have occurred within the scope of his employment. Thus, Plaintiff could still proceed against Parkview for malicious prosecution if her pleadings plausibly state a claim.

While Plaintiff's Amended Complaint satisfies the initiation and favorable termination elements, it does not sufficiently allege Parkview lacked probable cause or acted with malice. Plaintiff's Amended Complaint alleges Parkview "initiated or caused a prosecution without probable cause and with malice" and that "the case terminated in Plaintiff's favor." (ECF 14, ¶ 39). This lists all the necessary elements. But "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Any legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. So, to survive Parkview's motion to dismiss, Plaintiff needs to have pleaded facts to demonstrate the requisite malice and lack of probable cause. She has not.

The charges brought against Plaintiff were purportedly for criminal recklessness and reckless driving stemming from her flight from Officer Jones on October 26. (ECF 23-2, at 38). There is no dispute that this is true or that the case eventually terminated in her favor. But Plaintiff's Amended Complaint does not include any facts supporting the probable cause or malice elements. She cites several exhibits in support of her assertions that these elements are met, but does not explain how they demonstrate the absence of probable cause. Even if some inference of lacking probable cause could be drawn from the exhibits or elsewhere in her Amended Complaint, Plaintiff has also not alleged facts that would show the requisite malice. She makes no allegations of targeted animosity toward her from Parkview, a failure to investigate, or a lack of cause so severe that malice can be inferred. *Compare Welton*, 770 F.3d at 674 (holding conclusory legal assertions and an allegation that an officer intentionally presented false facts do not satisfy the malice requirement), *with Owens v. Downey*, 150 F. Supp. 3d 1008, 1028 (S.D. Ind. 2015) (holding Plaintiff satisfied the malice requirement by noting Defendant's history of personal animosity toward him and repeated false allegations of trespass against him).

Plaintiff argues that inconsistencies between different exhibits, along with Officer Jones chasing her on the mistaken belief that she was under a hold, demonstrate the necessary malice. But the discrepancies she highlights are tedious, such as whether the supposed hold was supposed

to be 48 or 72 hours. This does not support an inference of malice or lacking probable cause when pursuing criminal charges. Further, whether Officer Jones had authority to place her on a hold when he chased her has no bearing on whether probable cause existed to charge her with criminal recklessness and reckless driving, or whether Parkview acted with malice in pursuing said charges.

In sum, Plaintiff's Amended Complaint lacks the necessary facts to support her allegations that Parkview lacked probable cause or acted with malice in initiating criminal charges against her. That said, she may have facts she has not yet offered that would support those elements. If she can amend her complaint to provide a factual basis for the probable cause and malice elements, she could proceed against Parkview on a malicious prosecution claim. Thus, the Court will grant Plaintiff one more opportunity to amend this claim to add the necessary facts described above. Absent such an amendment, the motion to dismiss the malicious prosecution claim against Parkview is granted.

**D. IIED**

Plaintiff alleges "[a]ll applicable Defendants" are liable for IIED. (ECF 14, ¶ 41). She bases this claim on Officer Jones's brandishing of a firearm, her pre-planned detention at her October 30 therapy appointment, and the initiation of the later-dismissed criminal charges. To state an IIED claim, Plaintiff must allege "that a defendant (1) engaged in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress." *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997), *abrogated on separate grounds Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022).

Defendants argue that the ITCA and MMA prevent Plaintiff from pursuing this claim. They are correct. The allegations against Officer Jones for this claim overlap with Plaintiff's allegations against him for her assault, false imprisonment, and malicious prosecution. Only the pre-planned

detention allegation implicates Parkview, and this allegation overlaps with Plaintiff's MMA-barred false imprisonment claim. As the Court has explained, all actions Officer Jones allegedly took occurred within the scope of his employment. And Parkview's pre-planned detention was a health care decision covered by the MMA which, even if improper, required Plaintiff to obtain an opinion from a medical review panel before filing suit.

Defendants' motion to dismiss the IIED claim is granted.

**E. Defamation**

Plaintiff's final claim asserts defamation against Parkview. Specifically, she alleges that Parkview accused her of stealing drugs in a complaint directed to the Attorney General. She further asserts that Parkview intentionally manipulated dates on a criminal referral to the Attorney General's office to accuse her of the theft.

"In Indiana, defamation is actionable when communication exists with four elements: 'defamatory imputation, malice, publication, and damages.'" *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013) (quoting *Trail v. Boys & Girls Clubs of Nw. Ind.,* 845 N.E.2d 130, 136 (Ind. 2006)). Communications with a defamatory imputation must, by necessity, be false. *Id.* Defamation *per se* occurs when those communications impute "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Kelley v. Tanoos,* 865 N.E.2d 593, 596 (Ind. 2007).

Defendants agree that Plaintiff has stated a claim for defamation under Indiana law. They instead argue that Plaintiff cannot pursue this claim because Parkview's referral to the Attorney General is covered by qualified privilege.

The qualified privilege defense under Indiana law "applies to 'communications made in good faith on any subject matter in which the party making the communication has an interest or

in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'" *Partin v. Baptist Healthcare Sys., Inc.*, 135 F.4th 549, 564 (7th Cir. 2025) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)). Defendants bear the burden of establishing the existence of privilege "by proof of a recognized public or private interest which would justify the utterance of those words." *Id.* Once this burden is met, a plaintiff may overcome that privilege by showing that it was abused. *Id.* This can be done by showing that "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* "[C]ommunications made to law enforcement to report criminal activity are qualifiedly privileged." *Kelley*, 865 N.E.2d at 600. But "[u]nless only one conclusion can be drawn from the evidence, the question of whether the privilege has been abused is for the jury." *Kelley v. Tanoos,* 865 N.E.2d 593, 601 (Ind.2007).

Plaintiff has sufficiently pleaded defamation. She has also plausibly plead facts that could overcome the privilege asserted by Parkview. Plaintiff alleges, in essence, that Parkview supplied false dates on a criminal referral to the Attorney General's office to accuse her of theft. Whether that bears out as true in discovery or whether the contention survives summary judgment is another matter. But for now, Plaintiff has pled some facts that could possibly show actual malice or ill-will by Parkview and overcome the qualified privilege. *Cf. Mance v. Autozone,* 2026 WL 2388795, at *2 (N.D. Ind. Aug. 13, 2026).

Defendants' motion to dismiss the defamation claim against Parkview is denied.

## **CONCLUSION**

As set out above, Defendants' Motion to Dismiss (ECF 20) is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to Plaintiff's FMLA and defamation claims against

Parkview. It is GRANTED as to all other claims. Plaintiff is granted leave to file a second amended complaint solely to add factual allegations, if they exist, to her FCA retaliation, Rehabilitation Act discrimination and/or retaliation, and malicious prosecution claims against Parkview. Any amended complaint must be filed no later than October 2, 2026.

**SO ORDERED** on September 3, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT